J-S27039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARION L. GIBSON | : | |
| | : | |
| Appellant | : | No. 168 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 4, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0006993-2023

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED OCTOBER 17, 2025**

Appellant Marion L. Gibson, appeals from his December 4, 2024, judgment of sentence entered in the Court of Common Pleas of Montgomery County after the trial court convicted Appellant of persons not to possess a firearm, firearms not to be carried without a license, driving an unregistered vehicle, and obstructed window. After careful review, we affirm.

The trial court set forth the relevant factual history as follows:

> On November 15, 2023, Trooper [Matthew] Nikisher was working with his partner, Trooper Anthony Pickens, out of the Troop K Philadelphia Barracks on Belmont Avenue when they conducted a traffic stop on a gold color Saturn Vue because of an expired registration and excessive window tint on the front windshield and side windows. The stop occurred near the intersection of Belmont Avenue and Righters Ferry Road in Lower Merion Township, Montgomery County. Trooper Nikisher identified himself to Appellant and explained his reasons for the traffic stop.

_____

[*] Former Justice specially assigned to the Superior Court.

During this interaction, Trooper Nikisher noticed indicators of nervousness and deceit on the part of Appellant that he had been trained to recognize as part of his job. He observed that Appellant was wearing a hoodie. He also noted that Appellant was not wearing a seatbelt and the two (2) children in the backseat were not in safety seats or wearing seatbelts.

Trooper Nikisher returned to his patrol car to run information on Appellant's driver's license. From various record checks, the trooper learned that Appellant's driver's license was suspended and that he had previously been arrested for murder, voluntary manslaughter, robbery, and other charges including DUI. Several of the arrests had led to convictions. When the troopers returned to the vehicle, Trooper Nikisher asked Appellant twice whether there was anything illegal in the vehicle, including narcotics or firearms, to which Appellant responded there was not. The troopers returned to the patrol car a second time for approximately 45 seconds and, upon returning to the Saturn Vue, Trooper Nikisher asked Appellant to step out of the vehicle so that the trooper could show Appellant the dark windshield tint and why the trooper could not see inside of the vehicle.

As Appellant voluntarily stepped out of the vehicle, Trooper Nikisher noticed a bulge in the hoodie at Appellant's waistband. And as Appellant walked around to the rear of the vehicle, Trooper Nikisher could clearly tell that the bulge was not merely a ruffle in Appellant's hoodie. The trooper told Appellant that he saw something in Appellant's waistband and that he would pat him down for everyone's safety. At that point, Appellant raised his hands up above his shoulders and started walking away from Trooper Nikisher around the front of the vehicle to the driver's side. The trooper grabbed Appellant and felt a clear and apparent L-shaped bulge in Appellant's waistband. With the knowledge of Appellant's prior arrests making him a person not to possess, Trooper Nikisher detained Appellant and thereafter recovered a loaded black Glock 19, 9mm handgun from his waistband.

Trial Court Opinion 4/24/2025 at 2-3.

Concerning the "indicators of nervousness and deceit" which Trooper Nikisher observed Appellant exhibit, the Trooper would later testify that "During the course of interaction with [Appellant], [the Trooper] noted leaning

[and] failure to keep eye contact." N.T. Suppression hearing 9/4/2024 at 6. Topper Nikisher would explain:

"[He] asked standard questions, if there was anything illegal in the vehicle. [Appellant] kept eye contact with [the trooper and], said no. [The trooper] asked if there was any illegal narcotics in the vehicle. [Appellant] kept eye contact, again related no. [The trooper] asked Mr. Gibson if there were any firearms inside the vehicle [and,] this was the only deviation from all the indicators that [the trooper] had seen[: Appellant] looked down and to the left before re-meeting [the trooper's] gaze and saying no."

Id. at 7-8.

On May 9, 2024, Appellant filed a motion to suppress evidence, alleging that the above search of Appellant's person was conducted without a warrant, without consent, and without probable cause or reasonable suspicion. On September 4, 2024, a suppression hearing and a stipulated bench trial were held. At the conclusion of that proceeding, the trial court set forth its findings of fact on the record and subsequently denied Appellant's motion to suppress and convicted Appellant of persons not to possess a firearm, firearms not to be carried without a license, driving an unregistered vehicle, and obstructed window. N.T. Suppression Hearing 9/4/2024 at 40- 72. Appellant was sentenced on December 4, 2024, to: on possession of a firearm – prohibited, four to eight years confinement; on carrying a firearm without a license, three

and one half to seven years confinement, to be run concurrent with the foregoing; no further penalty on the remaining charges.

Appellant timely filed his notice of appeal on January 3, 2025. The instant appeal follows.

Appellant raises one question for this court's review:

"Whether the Trial Court erred in denying the Appellant's Motion to Suppress Evidence where the Appellant was subjected to an unlawful frisk for weapons without reasonable suspicion to believe the Appellant was armed and dangerous."

Appellant's Brief at 4.

We have previously set forth the following as concerns our standard of review and applicable law when addressing a challenge to the denial of a suppression motion under similar circumstances:

"[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where [] the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a

- 4 -

ruling on a pre-trial motion to suppress. Also, it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

It is well-settled that, during a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. Moreover, during a lawful traffic stop, the officer may order the driver [] of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot. We have recognized that when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car.

Further, if there is a legitimate stop for a traffic violation [] additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions. []

Additionally, the officer may conduct a pat-down of a suspect's outer garments if the officer observes conduct that leads him to reasonably believe the suspect may be armed and dangerous. In considering whether evidence supports a Terry frisk, we are guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon. In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous. When assessing the validity of a Terry frisk, we examine the totality of the circumstances."

*Commonwealth v. Wright,* 224 A.3d 1104, 1109 (Pa. Super. 2019)(citations omitted).

After careful review, we find no error in the trial court's holding that the search of Appellant's person was supported by reasonable suspicion. The initial stop was supported by probable cause where Appellant was driving

with, *inter alia*, excessive window tint. ***See*** 75 Pa.C.S.A. § 4524(e)(1) (pertaining to sun screening and other materials prohibited); ***Commonwealth v. Prizzia,*** 260 A.3d 263, 268-69 (Pa. Super. 2021)("[T]o possess probable cause that a vehicle is in violation of Section 4524(e)(1), an officer must only observe that the tint on the vehicle's windows is so dark that it prohibits the officer from seeing inside the car.")(citation omitted). During the stop, the Trooper became aware that Appellant had a suspended driver's license as well as a record of arrests, some related to crimes of violence, and several convictions, and the trooper noticed increasingly suspicious activity from the Appellant. The trooper was able to clearly articulate the bases for his suspicion, which included Appellant leaning excessively and demonstrating an inability to maintain eye contact when asked about the possible presence of firearms. After asking Appellant out of the vehicle, the trooper noticed a large bulge under Appellant's sweatshirt at the level of his waistline. When informed that the Trooper intended to pat Appellant down, Appellant turned and walked away from the Trooper. Taken together, these circumstances certainly give rise to reasonable suspicion for a frisk.

Accordingly, we conclude that the suppression court properly denied Appellant's motion to suppress.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/17/2025</u>